JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Evervictory Electronic B.V.I. Co., LTD.,<br><br>    Plaintiff,<br><br>vs.<br><br>Invision Industries, Inc.; Invision Automotive Systems, Inc.; Audiovox Corporation; and Does 1 to 10, inclusive,<br><br>    Defendants. | Case No. CV 10-8165 CAS (PLAx)<br><br>**ORDER ENTERING JUDGMENT IN FAVOR OF DEFENDANTS FOLLOWING BENCH TRIAL** |

### I.  JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff Evervictory Electronic B.V.I. Co., LTD., is a Chinese company. Defendant Automotive Systems Inc. ("Automotive") is a Florida corporation, and defendant Audiovox Corporation ("Audiovox") is a New York corporation. The amount in controversy exceeds $75,000. Venue is proper as all parties are subject to the personal jurisdiction in this district.

This action was tried to the Court on June 19, 20, and 21, 2012. Plaintiff was represented by Malcom S. McNeil of Fox Rothschild LLP and Paul M. Ma. of the Law Offices of Paul M. Ma. Defendants were represented by Kathryn S. Marshall and Robert L. Esensten of Wasserman Comden Casselman & Esensten LLP.

## II. FINDINGS OF FACT

1. Plaintiff is a DVD players and LCD monitors manufacturer located in Guangdong, China. Plaintiff made demand for payment from defendant Invision Industries Inc. (herein referred to as "IDB" by reason of the fact that Invision Industries changed its name to IBD after its sale of assets to Automotive on January 29, 2010) for goods sold to IDB, but IDB refused to pay. On or about April 8, 2011, plaintiff voluntarily dismissed defendant Invision/IDB from this action (Dkt. # 14).

2. On January 13, 2010, Audiovox formed Automotive as a wholly owned subsidiary to acquire certain assets and to assume certain liabilities of IDB. On January 29, 2010, an Asset Purchase Agreement and Ancillary Agreements ("Purchase Agreement") were entered into between Automotive and IDB and other entities as specified in the Definition Section 1.01 of the Purchase Agreement, by which Automotive purchased certain assets owned by IDB and assumed certain liabilities as specified in the Purchase Agreement.

3. Prior to and at all times during the negotiation of the Purchase Agreement, IDB was operated by a "work out company" called Aurora, which was brought in by IDB's lender, SunTrust Bank. As part of Aurora's restructuring of IDB's debt, Aurora negotiated and presented on a "take it or leave it" basis a package of certain assets and certain liabilities to Automotive, and others, to purchase certain assets and to assume certain liabilities of IDB.

4. The Purchase Agreement was negotiated as an arms length transaction between Automotive and IDB. There had been no business dealings between Automotive and IDB prior to the negotiation of the Purchase Agreement.

5. The Purchase Agreement and Ancillary Agreements were dated January 29, 2010. The Purchase Agreement specifies that it is comprised of the document entitled Asset Purchase Agreement as well as Ancillary Agreements which are defined at Section 1.01 of the Purchase Agreement as "the Bill of Sale, the Assignments of Intellectual

Property, the Southern Supply Agreement, the Lease, the Sales Representative Agreement, the Debt Restructuring Agreement, the agreement between the Purchaser and Chris Vitito as to the purchase by the Purchaser of Intellectual Property related to the business, the agreement between SunTrust Bank and the Purchaser as to the restructuring of the debt owed by the Seller to SunTrust Bank, and the Assumption Agreement."

6. The Purchase Agreement specifies which assets were to be purchased by Automotive from IDB and those assets were worth $23,556,000. The Purchase Agreement also specifies which liabilities of IDB would be assumed by Automotive and which liabilities of IDB would remain the responsibility of IDB. The Purchase Agreement specifies that the liability to Evervictory, and approximately two hundred and fifty (250) additional debts, would not be assumed by Automotive and would remain with IDB.

7. In connection with the Purchase Agreement, Automotive and/or Audiovox assumed and paid the following: (a) $8,236,000 in accounts payable liabilities (Ex. G), (b) the obligation to SunTrust Bank in the sum of $5,000,000 (Ex. U), and (c) the sum of $10,306,914.16 to creditors and Vitito, which sums were paid by wire transfers at the closing (Exs. E and F).

8. In connection with the Purchase Agreement (and an assignment agreement which is a defined Ancillary Agreement), Automotive and/or Audiovox paid Christopher Vittito the sum of $1,500,000 in return for intellectual property owned by Vittito at the closing.

9. Pursuant to the Purchase Agreement, Automotive and/or Audiovox paid the sum of $23,556,000 to acquire certain IDB assets.

10. Automotive acquired IDB's assets for fair market value.

11. Automotive and/or Audiovox paid full value or reasonably equivalent value for the assets of IDB.

12. Audiovox is a public company regulated by the Securities and Exchange Commission.

13. Audiovox reported the purchase of certain assets and the assumption of certain liabilities of IDB on a Form 8-K, dated February 9, 2010.

14. Audiovox reported the purchase of certain assets and the assumption of certain liabilities of IDB on a Form 10-K, dated July 12, 2010.

15. Audiovox reported the purchase of certain assets and the assumption of certain liabilities of IDB on its financial statements as Audiovox prepared consolidated financial statements covering its subsidiaries including, but not limited to, Automotive.

16. Automotive and Audiovox had no intent to hinder, delay or defraud any creditor of IDB.

17. Automotive and Audiovox did not conspire with anyone to hinder, delay or defraud any creditor of IDB.

18. IDB is an active corporation. Plaintiff has not presented any evidence of the financial condition of IDB.

19. Plaintiff and Automotive/Audiovox have never entered into a contract with one another.

20. Plaintiff has never sent an invoice to Automotive or Audiovox.

21. Plaintiff has never delivered any goods to Automotive or Audiovox.

22. Certain of the goods which were the basis of plaintiff's claim against IDB were shipped to IDB via TopOcean prior to the Purchase Agreement.

23. TopOcean then delivered and/or released goods shipped to IDB contrary to the instructions of plaintiff.

24. On May 24, 2010, plaintiff sued TopOcean for some of the same damages alleged in this action.

25. On December 22, 2011, plaintiff entered into a settlement agreement with TopOcean that released all claims related to the delivery of goods to IDB. Plaintiff

received $73,492 from TopOcean in connection with the December 2011 settlement.

26. To the extent necessary, each of these findings of fact may be deemed to be a conclusion of law.

## II. CONCLUSIONS OF LAW

27. On June 4, 2012, the Court granted defendants' Motion in Limine, which precluded plaintiff from presenting any evidence or argument relating to the issue of successor liability.

### A. Plaintiff's First Claim for Relief for Breach of Contract

28. Plaintiff has not established the existence of a valid contract as between plaintiff and Automotive. There is no contractual privity as between plaintiff and Automotive.

29. Plaintiff has not established the existence of a valid contract as between plaintiff and Audiovox. There is no contractual privity as between plaintiff and Audiovox.

30. Plaintiff has not established that Automotive is the successor in interest of IDB. Automotive is not liable to plaintiff in connection with IDB's alleged breach of contract as a successor in interest.

31. Plaintiff has not established that Audiovox is the successor in interest of IDB. Audiovox is not liable to plaintiff in connection with IDB's alleged breach of contract as a successor in interest.

### B. Plaintiff's Second Claim for Relief for Open Book Account:

32. Plaintiff has not established the existence of an open book account as between plaintiff and Automotive. There is no contractual privity as between plaintiff and Automotive. Plaintiff never sent any invoices to Automotive. Plaintiff never shipped goods to Automotive.

33. Plaintiff has not established the existence of an open book account as

between plaintiff and Audiovox. There is no contractual privity as between plaintiff and Audiovox. Plaintiff never sent any invoices to Audiovox. Plaintiff never shipped goods to Audiovox.

34. Plaintiff has not established that Automotive is the successor in interest of IDB. Automotive is not liable to plaintiff in connection with IDB's alleged open book account as a successor in interest.

35. Plaintiff has not established that Audiovox is the successor in interest of IDB. Audiovox is not liable to plaintiff in connection with IDB's alleged open book account as a successor in interest.

### C. Plaintiff's Third Claim for Relief for Common Counts:

40. Plaintiff has not established any liability of Automotive pursuant to a common counts theory. There is no contractual privity as between plaintiff and Automotive. Plaintiff never sent any invoices to Automotive. Plaintiff never shipped goods to Automotive.

41. Plaintiff has not established any liability of Audiovox pursuant to a common counts theory. There is no contractual privity as between plaintiff and Audiovox. Plaintiff never sent any invoices to Audiovox. Plaintiff never shipped goods to Audiovox.

42. Plaintiff has not established that Automotive is the successor in interest of IDB. Automotive is not liable to plaintiff in connection with its common count claims as a successor in interest.

43. Plaintiff has not established that Audiovox is the successor in interest of IDB. Audiovox is not liable to plaintiff in connection with its common count claims as a successor in interest.

### D. Plaintiff's Fourth Claim for Relief for Fraudulent Conveyance with Actual Intent to Defraud:

44. Plaintiff failed to prove that Automotive acted with the actual intent to

hinder, delay or defraud any creditor of IDB in connection with the Purchase Agreement.

45. Automotive did not act with the actual intent to hinder, delay or defraud any creditor of IDB in connection with the Purchase Agreement.

46. Plaintiff failed to prove that Audiovox acted with the actual intent to hinder, delay or defraud any creditor of IDB in connection with the Purchase Agreement.

47. Audiovox did not act with the actual intent to hinder, delay or defraud any creditor of IDB in connection with the Purchase Agreement.

48. Automotive and/or Audiovox paid the actual value or the reasonably equivalent value for all assets acquired from IDB.

**E.     Plaintiff's Fifth Claim for Relief for Fraudulent Conveyance with Insufficient Consideration:**

49. Plaintiff failed to prove that Automotive acted with the actual intent to hinder, delay or defraud any creditor of IDB in connection with the Purchase Agreement.

50. Automotive did not act with the actual intent to hinder, delay or defraud any creditor of IDB in connection with the Purchase Agreement.

51. Plaintiff failed to prove that Audiovox acted with the actual intent to hinder, delay or defraud any creditor of IDB in connection with the Purchase Agreement.

52. Audiovox did not act with the actual intent to hinder, delay or defraud any creditor of IDB in connection with the Purchase Agreement.

53. Automotive and/or Audiovox paid the actual value or the reasonably equivalent value for all assets acquired from IDB. Sufficient consideration was paid by Automotive and/or Audiovox for the assets of IDB.

54. There is no evidence that, as a result of the Purchase Agreement, IDB was left with insufficient assets to engage in its business and pay its outstanding liabilities.

**F. Plaintiff's Sixth Claim for Relief for Fraudulent Conveyance Resulting in Insolvency:**

55. Plaintiff failed to prove that Automotive acted with the actual intent to

hinder, delay or defraud any creditor of IDB in connection with the Purchase Agreement.

56. Automotive did not act with the actual intent to hinder, delay or defraud any creditor of IDB in connection with the Purchase Agreement.

57. Plaintiff failed to prove that Audiovox acted with the actual intent to hinder, delay or defraud any creditor of IDB in connection with the Purchase Agreement.

58. Audiovox did not act with the actual intent to hinder, delay or defraud any creditor in connection with the Purchase Agreement.

59. Automotive and/or Audiovox paid the actual value or the reasonably equivalent value for all assets acquired from IDB. Sufficient consideration was paid by Automotive and/or Audiovox for the assets of IDB.

60. There is no evidence that, as a result of the Purchase Agreement, IDB was left with insufficient assets to engage in its business and pay its outstanding liabilities.

61. There is no evidence that IDB was insolvent at the time of the Purchase Agreement or as a result of the Purchase Agreement.

**G.  Plaintiff's Seventh Claim for Relief for Conspiracy:**

62. Plaintiff failed to prove that Automotive formed or operated a conspiracy.

63. Automotive did not form or operate a conspiracy.

64. Plaintiff failed to prove that Automotive engaged in any wrongful acts in furtherance of a conspiracy.

65. Automotive did not engage in any wrongful acts in furtherance of a conspiracy.

66. Plaintiff failed to prove that Automotive encouraged a conspiracy.

67. Automotive did not encourage a conspiracy.

68. Plaintiff failed to prove that it suffered any damages as a result of Automotive's conduct.

69. Plaintiff did not suffer any damages as a result of Automotive's conduct.

70. Plaintiff failed to prove that Audiovox formed or operated a conspiracy.

8

71. Audiovox did not form or operate a conspiracy.

72. Plaintiff failed to prove that Audiovox engaged in any wrongful acts in furtherance of a conspiracy.

73. Audiovox did not engage in any wrongful acts in furtherance of a conspiracy.

74. Plaintiff failed to prove that Audiovox encouraged a conspiracy.

75. Audiovox did not encourage a conspiracy.

76. Plaintiff failed to prove that it suffered any damages as a result of Automotive's conduct.

77. Plaintiff did not suffer any damages as a result of Audiovox's conduct.

78. To the extent necessary, each of these conclusions of law may be deemed to be a finding of fact.

IT IS SO ORDERED that Plaintiff take nothing on its First, Second, Third, Fourth, Fifth, Sixth and Seventh Claims for Relief.

IT IS FURTHERED ORDERED that Defendants Audiovox and Automotive shall be entitled to judgment in their favor on the First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action and shall be awarded their costs of suit.

Defendants Audiovox and Automotive shall file their Motion for Attorneys' Fees in which they set forth the amount of attorneys' fees incurred as well as the basis for their recovery of such fees in accordance with Federal Rule of Civil Procedure 54(d)(2)(B).

Dated: July 13, 2012

*Christina A. Snyder*
Christina A. Snyder
United States District Judge